# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 1:18-cr-330 |
| LOGAN McCAULEY ) | |
| ) | |

## MEMORANDUM OPINION

Following a 3-day jury trial, Defendant Logan McCauley was convicted of one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) & (e). On April 26, 2019, a fifteen (15) year sentence of incarceration was imposed on defendant – the mandatory minimum for his offense – as well as a five-year term of supervised release. At the time of sentencing, the government was not prepared to establish what losses defendant's criminal conduct caused the victim – N.C.[1]

At issue now is the government's motion for restitution of $58,453.50 on behalf of N.C. Defendant opposes the imposition of restitution. Although the government's request for restitution is well beyond the 90-day deadline imposed by 18 U.S.C. § 3664(e), determining the amount of restitution proximately caused by defendant's offense is appropriate based on the Supreme Court's holding in *Dolan v. United States*, 560 U.S. 605 (2010). The government has not, however, satisfied its burden of establishing that the $58,453.50 in medical expenses that N.C. has incurred were proximately caused by defendant's offense. Accordingly, for the reasons set forth below and for the reasons stated from the bench at the January 10, 2020 hearing, the government's motion must be denied, and no restitution will be imposed.

---

[1] Because the victim in this case is a minor, she will be referred to by her initials "N.C."

1

# I.

The facts regarding this criminal prosecution are appropriately drawn from the presentence investigation report adopted by the Court and the parties' submissions regarding restitution.

- In 2017, N.C. was a 13-year old girl from Marion County, West Virginia and defendant was a 24-year old man from Hamilton, Virginia.

- In November 2017, N.C. and defendant met on LiveMe, a social media platform.

- After communicating on LiveMe and other social media platforms, N.C. sent defendant unsolicited pictures of herself in her underwear. Later, defendant asked N.C. to provide more pictures and sent pictures of himself naked.

- On November 26, 2017, N.C. requested that defendant come pick her up. At 1 a.m. on November 27, 2017, defendant retrieved N.C. from her home and drove her to Virginia.

- In Virginia, N.C. and defendant had sex on several occasions. On November 27, 2017, defendant used his Apple iPhone to take several pictures of himself in bed with N.C. and filmed a 19-second video of himself having sex with N.C.

- On November 27, 2017, the FBI was notified that N.C. was missing from her home.

- On November 28, 2017, law enforcement discovered that N.C.'s Facebook account had been accessed via an IP address associated with defendant's mother in Hamilton, Virginia.

- When law enforcement arrived at defendant's home in Hamilton, they discovered defendant, N.C., and defendant's mother. Defendant and N.C. both denied N.C.'s true identity and provided a false name and false age.

- Defendant volunteered to law enforcement that he had transported N.C. from West Virginia to Virginia but maintained that N.C. had told him that she was 22. Defendant stated that he knew N.C. as "Kayla Washington" and that she was a 21- or 22-year-old divorcee turned stripper with two children.

- Defendant also admitted that he had engaged in multiple sex acts with N.C. and that he had used his Apple iPhone to record the pair having sex.

- When N.C. spoke with law enforcement, she stated that she believed that defendant knew that she was 13 and that defendant had asked her to lie about her age.

- On August 1, 2018, a criminal complaint and supporting affidavit were filed, charging defendant with one count of production of child pornography.

- Defendant was arrested on August 7, 2018.

- On September 5, 2018, a federal grand jury returned a one-count indictment charging defendant with production of child pornography.

- Thereafter, on January 30, 2019, a jury trial commenced against defendant.

- On February 1, 2019, the jury returned a verdict of guilty on the single count of the indictment.

- On April 26, 2019, defendant was sentenced to 15-years of incarceration – the mandatory minimum – and a five-year term of supervised release. The judgment in a criminal case ("J&C") entered that same day states, "Restitution to be ordered at a later date."

- A restitution hearing was scheduled for May 17, 2019, 22 days after sentencing.

- On May 10, 2019, the government moved to continue the restitution hearing, because additional time was necessary to understand the scope of N.C.'s losses.

- On May 13, 2019, an order issued granting the government's motion and continuing the restitution hearing to July 19, 2019, 90 days after sentencing. The Order held that a continuance was reasonable "to allow the government to ascertain the full amount of the victim's losses for resolution by the Court."

- On June 25, 2019, at the government's request, Sarah Bruns was appointed as guardian *ad litem* for N.C. for the purpose of assisting N.C. in obtaining restitution.

- On July 12, 2019, the government again moved to continue the restitution hearing, arguing that the guardian *ad litem* required additional time to consult with N.C., her family, and treatment providers and to collect documents.

- On July 15, 2019, defendant filed his opposition to the motion to continue.

- On July 17, 2019, an order issued setting a hearing on the motion to continue for July 19, 2019.

- On July 18, 2019, the government filed a notice stating that "[t]he government has insufficient information at this time to support a restitution claim and thus expects no restitution judgment will be awarded if the government's requested continuance is not granted."

- On July 19, 2019, a hearing on the motion to continue was held. That same day an order issued granting in part and denying in part the government's motion to continue. The Order held that it was appropriate to continue the hearing to permit the government "to collect whatever information is necessary to establish what restitution may be appropriate." The restitution hearing was continued until August 23, 2019, more than 90 days after sentencing.

3

- On August 23, 2019, the restitution hearing was held, but the government had not yet submitted briefs calculating the losses that it argued were proximately caused by defendant's offense. Accordingly, the Court required the government to submit supplemental briefing by September 4, 2019 and defendant to file a response by September 11, 2019.

- On September 4, 2019, the government filed its supplemental brief and, for the first time, provided documents which purported to calculate N.C.'s losses.

- On September 11, 2019, defendant opposed the government's request for restitution.

- On January 9, 2020, a second restitution hearing was held. At the hearing, the parties agreed that further argument was not necessary and that the parties' positions were stated adequately in their briefs.

## II.

Pursuant to 18 U.S.C. § 2259(a), restitution to child pornography victims is mandatory and required to compensate the victim for "the full amount of the victim's losses." 18 U.S.C. § 2259(a) and (b). The "full amount of the victim's losses" includes "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." *Id.* at § 2259(c)(2). Those losses include: (1) medical services; (2) therapy or rehabilitation; (3) necessary transportation, housing, or child care expenses; (4) lost income; (5) attorney's fees; and (6) other losses proximately caused by the offense. *Id.* at § 2259(b)(3). In *Paroline v. United States*, 572 U.S. 434 (2014), the Supreme Court held that restitution under § 2259 is only proper "to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 448.

Section 2259 is "issued and enforced in accordance with Section 3664," 18 U.S.C. § 2259(a), which provides that, if the victim's losses are not ascertainable by 10 days prior to sentencing, "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). The government bears the burden of

proving the victim's losses by a preponderance of the evidence. *See* 18 U.S.C. §§ 2259(b)(2), 3664(e).

In opposing the government's motion, defendant makes four arguments:

(1) that the motion is untimely;

(2) that because the 19-second video was never distributed, the offense of conviction did not cause the victim any harm;

(3) that N.C.'s medical expenses are attributable to her pre-existing traumas and mental condition; and

(4) that the government failed to prove the proximate causation required by *Paroline*.

### A. The Government's Motion is Timely.

Defendant argues that the 90-day period from sentencing provided by statute has expired and therefore the government's motion is untimely. Here, the government was clearly unable to establish the amount of N.C.'s losses and the appropriate amount of restitution before expiration of the 90-day deadline imposed by §3664(d)(5). *See* July 18, 2019 Notice at 1-2. Despite the inclusion of the word "shall" in § 3664(d)(5), the Supreme Court has held that "[t]he fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." *Dolan*, 560 U.S. at 615.[2] Other portions of the *Dolan* decision imply that this holding is limited to situations where "the sentencing court made clear prior to the deadline's expiration that it would order restitution." *Id.* at 608. Here, there was arguably no such clear finding. In *Dolan*, there was also arguably no clear finding. Yet, in *Dolan*, the Supreme Court found adequate, and relied on, the district court's remark in the judgment that restitution was "applicable." *Id.* at 620. The

---

[2] The dissent makes the persuasive argument that: "It is up to Congress to balance the competing interests of recovery and finality. Where – as here – it has done so clearly, the 'judicial inquiry is complete.'" *Dolan*, 560 U.S. at 630 (Roberts, C.J., dissenting). Chief Justice Roberts' compelling view did not prevail, however, and the majority permits an exception to the 90-day deadline.

5

language in *Dolan* does not appear markedly different from the language in the J&C in this case, namely: "Restitution to be ordered at later date." Apr. 26, 2019 J&C.[3]

Although it is a close question, given the similarities in the language at issue in the judgment in *Dolan* and the language in the J&C here as well as the fact that, pursuant to § 2259, restitution is mandatory, it appears that the 90-day deadline in § 3664 does not, in this case, bar consideration of restitution at this time. The government's motion here is therefore timely pursuant to *Dolan*. Accordingly, it is appropriate to determine what restitution, if any, is warranted here. In the future, however, it would be prudent for the government, which has the duty of seeking restitution and the burden of proving it, to request that the sentencing court make clear in the record that there is a finding that the victim is entitled to restitution and that only the amount remains at issue, which would eliminate the ambiguity present here.

### B. The Sex Act Was a Necessary Predicate for the Offense of Conviction

Defendant argued that the offense of conviction – production of a 19-second video that was not distributed – cannot be said to have caused the victim nay harm. Opp'n at 16. Defendant's view of the offense of conviction is too narrow; the offense of conviction – production of child pornography – clearly includes abuse of a minor for which the minor is entitled to restitution, if restitution can be proved.

Neither defendant nor the government cites any caselaw as to whether production of child pornography involves abuse of a minor for which restitution is appropriate. There is, however, relevant and persuasive case law to the effect that the sex act, and any associated trauma, are part

---

[3] At the January 10, 2020 hearing, the government asserted that the May 13, 2019 and July 19, 2019 Orders on the government's motions to continue the restitution hearing went further than the language included in the J&C. Those Orders do not find that N.C. is entitled to restitution or that any of N.C.'s losses were proximately caused by defendant. The May 13, 2019 Order merely notes that a continuance is appropriate to permit the government "to ascertain the full amount of the victim's losses for resolution by the Court." Similarly, the July 19, 2019 Order continues the restitution hearing so that the government may "collect whatever information is necessary to establish what restitution may be appropriate."

6

of the offense of conviction for producing that child pornography. Simply put, the cases sensibly recognize that for a production of child pornography offense, there can be no offense without a sexual exploitation of the child victim.

In *United States v. Osman*, 853 F.3d 1184 (11th Cir. 2017), the defendant, who was charged with several counts of production of child pornography, made an argument essentially similar to the argument defendant makes here. The Eleventh Circuit rejected this argument, and, in addressing whether the defendant caused the victim's losses under *Paroline*, the Eleventh Circuit held: "It is undisputed Osman triggered the 'causal process' underlying the losses suffered by A.E. because he perpetrated the abuse, produced the child-pornography images of her, and disseminated them." *Id.* at 1190. Indeed, the Eleventh Circuit went further than merely affirming an award of future therapy based specifically on the "sexual abuse" that the victim suffered to state specifically that the restitution was necessary to cover therapy for "a child who was molested by her father." *Osman*, 853 F.3d at 1192.

In *United States v. Danser*, 270 F.3d 451 (7th Cir. 2001), the Seventh Circuit affirmed a restitution award of over $300,000 in a case where the pornographic images were never distributed, but the victim's therapist testified about the severe mental and physical trauma that the victim suffered as a result of the abuse that the defendant recorded in the child pornography. *See id.* at 453-56. Similarly, in *United State v. Bour*, No. 2:13-cr-36, 2015 WL 58761 (N.D. Ind. Jan. 5, 2015), the defendant documented his abuse of his victims, but did not distribute the images. There, the district court sensibly held that "[t]he fact that Defendant did not distribute the recordings of his abuse on the Internet does not negate a finding that the victims were indeed harmed." *Id.* at *6. Moreover, as the district court there recognized: "Defendant's assertion that children can only be harmed when pornography is distributed, rather than when the actual

7

production and/or sexual abuse itself took place is ludicrous. Both the production of child pornography and the resultant distribution can cause children to be traumatized." *Id.* Indeed, the Supreme Court has recognized that "the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. 747, 758 (1982).

Production of child pornography can occasion a loss to the victim, so long as the loss can be proved, even where the images are not disseminated or viewed. The sexual act with a child that is documented in the video that forms the basis for defendant's offense of conviction is part of his offense conduct for purposes of restitution. Accordingly, in determining the appropriate amount of restitution, it is appropriate to consider not only any trauma or losses that may have resulted from the documentation of the sex act in the child pornography but also from the sex act with a minor itself.

### C. N.C.'s Pre-Existing Trauma Does Not Bar Restitution.

Defendant next argues that N.C.'s need for therapy and trauma are the result not of defendant's offense, but of other factors. In this regard, defendant relies on N.C.'s history of running away and her difficulty in making healthy decisions as evidence of her prior trauma. Defendant argues that "she does not have these problems because of Logan." Opp'n at 15. This argument fails; a defendant may not prey on vulnerable populations only to avoid a restitution obligation because of the nature of his victim. In this regard, the law applicable to restitution holds that, consistent with tort law generally, a defendant takes his victim as he finds her and may owe restitution for treatment necessary to address losses that *his conduct* caused her.

Courts analyzing this question have held that a pre-existing mental condition does not bar restitution. In *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999), the defendant argued that

he was not the proximate cause of a victim's losses because she had pre-existing psychological problems. The Third Circuit held, "[d]espite that reality, it was entirely reasonable for the District Court to conclude that the additional strain or trauma stemming from Crandon's actions was a substantial factor in causing the ultimate loss." *Id.* at 126. Similarly, the D.C. Circuit, in *In Re Sealed Case*, 702 F.3d 59 (D.C. Cir. 2012), affirmed a restitution order over a defendant's objection that "the district court did not properly take into account the fact that the four minors had been involved in prostitution or other traumatic events before their contact with [the defendant]." *Id.* at 201. Similarly, in *United States v. Pearson*, No.1:04-cr-340, 2009 WL 2383025 (N.D.N.Y. July 30, 2009), the district court imposed a restitution award based on "need for the drastically increased mental health interventions required after [the victim's] victimization by Defendant," despite her pre-existing need for counseling and medications. *Id.* at *3-4. In *United States v. Neuhard*, No. 15-cr-20425, 2018 WL 1556232 (E.D. Mich. Mar. 30, 2018), the district court held that "[i]t is well-settled that defendants take victims as they find them" and that the focus on the victim's family issues was unpersuasive. *Id.* at *3.

Thus, the sensible consensus among courts is that a victim's pre-existing condition does not prevent restitution from being imposed for trauma that aggravated a victim's pre-existing condition or caused additional losses, so long as those losses are proximately caused by the defendant's conduct. Accordingly, N.C.'s pre-existing trauma and the necessity of therapy or counseling to treat that trauma does not bar restitution for an aggravation of her condition that N.C. suffered as a proximate result of defendant's conduct.

Additionally, *Paroline* itself supports the result reached here. In *Paroline*, the victim – who used the pseudonym "Amy" – was sexually abused as a child and child pornography including her image was shared worldwide to thousands of different people. 572 U.S. at 440. It

9

was therefore very difficult to establish what restitution should be awarded against any individual defendant who possessed child pornography containing images of Amy. Amy, like N.C., suffered from pre-existing abuse. Yet, the Supreme Court held that it would "produce anomalous results to say that no restitution is appropriate in these circumstances." *Paroline*, 572 U.S. at 457. Rather, "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458.

In sum, defendant should not be permitted to evade mandatory restitution because his victim was part of a vulnerable population and had already suffered from extensive trauma. In such circumstances, as the *Paroline* Court recognized, the analysis narrows to examine what losses are associated with the harm caused by *this defendant* and *this offense*.

### D. The Record Does Not Establish That N.C.'s Losses Were Proximately Caused by Defendant.

The government seeks a restitution award of $58,453.50. To support its request, the government attached four exhibits: (a) an undated, unsigned, and unsworn letter from Ashlee Heberger-Jividen a residential therapist with Crittenton Services, Inc.; (b) a collection of letters from the National Youth Advocate Program ("NYAP"); (c) an email from Crittenton Services Inc. regarding medical billing documents; and (d) account statements from Crittenton Services, Inc. Despite the delays requested by the government, the government has not: (1) requested an evidentiary hearing; (2) offered any testimony from any witness regarding the victim's losses; (3) offered any sworn statements, declarations, or affidavits regarding the victim's losses; or (4) provided any information about the persons providing the information included in Exhibits A-D. Thus, the record is not sufficient to establish proximate cause and the government's motion must be denied.

The government concedes that N.C. has "a history of adverse life experiences" and that a restitution award is limited to losses caused by defendant. Mot. at 3, 5. Yet, the letters from NYAP do not connect the treatment that N.C. received to defendant's offense. The letters speak generally of addressing N.C.'s trauma, but do not mention the defendant, this case, or even Virginia. *See* Exh. B. Moreover, the letters make clear that NYAP is providing family counseling to address "problems with family functioning," "high levels of conflict" within the family, and how N.C.'s unspecified "trauma" effected N.C. and her family. *Id.* The letters do not establish that the services NYAP are providing are related to trauma proximately caused by defendant in any way. Accordingly, the government has failed to meet its burden to establish proximate cause with respect to the services provided by NYAP. Additionally, it does not appear that the government is even seeking restitution for the services provided by NYAP or which may be provided by NYAP in the future. The government seeks a restitution award of $58,453.50 which only includes the amounts billed by Crittenton Services, Inc.

The government also fails to meet its burden to establish proximate cause for the $58,453.50 in services provided by Crittenton Services, Inc. While the government correctly points out that courts have held that evidence that "bears 'minimal indicia of reliability'" may be used to support a restitution award,[4] the government's evidence does not meet that threshold here. Ms. Heberger-Jividen's letter is devoid of any information establishing the reliability of the document or the credibility of the opinions contained within it. Ms. Heberger-Jividen's letter is unsigned, undated, not made under oath, and contains no information about her credentials to determine the losses associated with defendant's offense. The letter does specifically connect the services that Crittenton provided to N.C.'s "experience in Virginia," but is devoid of any

---

[4] *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997).

11

specifics to make that opinion reliable. There is not even any information suggesting that Ms. Heberger-Jividen knows what N.C. experienced in Virginia or that the "experience in Virginia" refers to the offense conduct in this case. It is also unclear whether Ms. Heberger-Jividen was the person providing treatment to N.C. or merely repeating what other treatment providers had either told her or written in their notes. Without any details about who Ms. Heberger-Jividen is, her credentials and experience, the information on which she relied, and her qualifications to make the statements in her letter, the conclusions she reaches are unreliable and not persuasive.

Moreover, Ms. Heberger-Jividen's letter does not even refer to the unverified, unsworn account statements that are attached as Exhibit D or attempt to explain the services to which the ten pages of billing entries relate. In fact, there is no information in Exhibit D or otherwise in the record to explain for what services any of the billing entries are made. It is clear from the entries included in Exhibit D that not all of the charges are for the same services, as the charges vary from as much as $6113.14 to as little as $12.40. These charges clearly involve very different services, but there is no explanation of what services were provided, why they were necessary, or how they related to the trauma N.C. suffered from defendant's offense.

An examination of the letters and documents provided by the government does not make persuasively clear what services N.C. received, what they cost, and to what trauma they related. Although no victim is required to participate in any phase of the restitution process, a lack of involvement by the victim makes the government's task significantly more difficult. *See* 18 U.S.C. § 3664(g)(1). Here, it appears that the government experienced difficulty collecting information regarding N.C.'s losses because her family did not wish to participate in the restitution process. Nonetheless, in the future, it would be prudent for the government to be prepared to present testimony and evidence, by subpoena if necessary, regarding proximate

cause. Unfortunately, the evidence the government relies on to establish proximate cause is too thin and unreliable to meet the government's burden under *Paroline*. Proximate cause evidence is made of sterner stuff than this. Thus, no restitution will be imposed in this case and the government's motion must be denied.

### III.

For the reasons set forth above, and for the reasons stated from the bench at the January 10, 2020 hearing, the government's motion for restitution will be denied.

An appropriate order will issue separately.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
January 13, 2020

/s/
T. S. Ellis, III
United States District Judge