# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. 1:18-CR-330 |
| ) | |
| v. ) | The Hon. T.S. Ellis, III |
| ) | |
| LOGAN ROY MCCAULEY, ) | |
| ) | |
| *Defendant*. ) | |

## POSITION OF THE UNITED STATES ON PROCEEDING AFTER REMAND

It is the position of the United States that this case can and should be retried. This is so given the nature of the conduct at issue: a defendant who engaged in sexualized online chats with self-identified minors, and later crossed state lines, picked up a 13-year-old girl, and then recorded himself sexually abusing her. Moreover, contrary to defense counsel's suggestion, the opinion the Fourth Circuit issued in this case does not direct the government to drop its prosecution in favor of state proceedings. The government therefore asks this Court to set this matter for trial in June, and to continue to detain the defendant pending trial.

## BACKGROUND

As the Court will recall, this case is about a video that the defendant created of himself abusing a 13-year-old girl named N.C. The government established at trial that, only days after meeting N.C. online, the defendant picked her up from her West Virginia home, drove her to his mother's house in Virginia, and had sex with her. The defendant brought his iPhone to bed with him, and he used it to record a video of himself sexually abusing N.C.

The Court also will recall from the defendant's sentencing that, preceding the defendant's hands-on abuse, were a number of highly inappropriate communications with self-identified

minors.  For instance, law enforcement recovered Facebook Messenger communications from the defendant's iPhone that were dated between January 2016 and November 2017.  In these messages, the defendant messaged an individual who identified herself as 16 years old.  The defendant, who was 22 years old at the time, first contacted the minor on or about January 3, 2016.  After learning that he was messaging with a 16-year-old, the defendant did not discontinue the conversation but instead quickly made clear his sexual interest in the minor.  The defendant's reaction on learning the minor's age was to remark that it "suck[ed]" the minor was 16 because he "liked [her]" but did not "wanna go to jail."  Later that evening, the defendant implored the minor to "[v]id[eo] chat" with him, asked whether she was a virgin, encouraged her to connect with him via his Snapchat account, and requested "more pics" because he "like[d] getting pics" of the minor.  In addition, the defendant used language designed to flatter the minor, calling her "hun" (as in, "honey"), "baby," "babe," and "[s]exy."

The next day, on or about January 4, 2016, the defendant escalated the sexual nature of his communications with the minor.  He implored her to "[c]ome cuddle . . . [w]ith [him] . . . [i]n [his] bed," announced that he had a "problem" because he was "horny," declared that he had "a 9 inch sausage" for the minor, remarked that he would "love some pics of [the minor]," and proclaimed that he was "really hard . . . [t]hinking about [the minor]."  This exchange culminated in the defendant's announcement that he wanted to "make love to [the minor]."

Similarly, records obtained from LiveMe, a social networking application, show that the defendant used LiveMe in November 2017 to communicate with individuals who identified themselves as minors.  For example, on or about November 7, the defendant, who was 24 years old at the time, exchanged messages with a LiveMe user who identified herself as "fourteen."  Upon learning that this user was a minor, the defendant asked if it was "ok that" he

2

was "24" and queried whether the minor would "want [him] to date [her]." Then, on or about November 10, 2017, the defendant sent several messages to a LiveMe user even after the user identified themselves as being 11-years old. Nine days later, the defendant communicated with a LiveMe user who indicated that they were 12 years old. The defendant sent numerous messages to the minor after learning the minor's age, including one that called the minor a "[h]otty."

These messages are particularly alarming given what happened later in November 2017. As shown at trial, the defendant told law enforcement in a voluntary interview on November 30, 2017, that he met N.C. online "sometime" the prior week through LiveMe. He admitted talking about sex with N.C. over the phone before they met in person. And, he admitted to using at least Snapchat to send naked photographs of himself to N.C. In fact, law enforcement identified messages from the defendant to N.C. in which he called her "[b]aby" or "babe," told N.C. that he was "hard," and asked for "more pics."

On November 26, 2017, the defendant met N.C. in person for the first time. On that day, N.C. sent the following message to the defendant: "Hey, babe, can you come get me tonight?" N.C. claimed that she was "going to die to night" and that her mother would "kill [her] if [she] [didn't] get out to night." The defendant initially declined to go, but subsequently said he would pick up N.C. He thereafter drove by himself for 3.5 hours from his home in this District to N.C.'s home in West Virginia. He arrived there around 1:30 a.m. and then immediately drove with N.C. back to his home, arriving there by approximately 5:00 a.m.

About two hours later, around 7:00 a.m., the defendant's Apple iPhone was used to capture six images of the defendant in bed with N.C.; those images showed the pair smiling at the camera and kissing. After these photos were taken, the defendant started having sex with

N.C. As the defendant later explained to Loudoun County Sherriff's Office Detective David Orr, at some point during intercourse, he started filming it. The defendant recalled either asking N.C. "if we could do the video" or "just kind of grabb[ing] [his] phone and [N.C.] go[ing] 'what are you doing?' and [telling] her [he] was going to make a video and [N.C.] go[ing] okay." The defendant denied they discussed creating the video beforehand.

The defendant recorded the 19-second-long video at 8:22 a.m. Initially, the defendant recorded N.C.'s face and her exposed breasts, and the movement and sounds in the video indicate the defendant is having sexual intercourse with N.C. At approximately the 11-second mark, the defendant pans the camera down to N.C.'s genitalia. The defendant then records his penis penetrating N.C.'s genitalia for about five seconds, after which he pans the camera back to N.C.'s upper body. The defendant does not speak during the video.

The government also established at trial that, in order to record his sex with N.C., the defendant had to have manipulated his iPhone in one of three ways: pressing a button, swiping the lock screen, or unlocking the iPhone with a passcode or fingerprint and then opening the camera application. For any of these methods, the defendant would have had to activate the video function of the camera if it were not already set to that mode.

The government, moreover, proved at trial that, at 9:04 a.m., the defendant's iPhone was used to take a picture of the defendant in bed with N.C., who is topless. About 50 minutes later, around 9:54 a.m., the defendant went online and bragged about the video. Specifically, the defendant used Facebook Messenger to tell another user he was "[l]aying in bed with [his] girl," adding, "[w]e ended up making a video this morning, lol." The defendant received the message "Oh [L]ord" in response, to which he responded, "Lol yea."

4

A grand jury subsequently charged the defendant with one count of production of child pornography, in violation of 18 U.S.C. § 2251(a). The defendant proceeded to trial, and a jury convicted him of violating § 2251(a).

## ARGUMENT

On appeal, the Fourth Circuit clarified the *mens rea* that the government must establish in § 2251(a) prosecutions. The court concluded that, based on the plain language of the statute, its minimum penalty, and precedent, § 2251(a)'s "the purpose" language "requires something more than 'a purpose.'" *United States v. McCauley*, No. 19-4318, 2020 WL 7414398 at *5 (4th Cir. Dec. 18, 2020). The Fourth Circuit explained that "the filming [must] be at the very least a significant purpose in the sexual conduct itself, not merely incidental." *Id.* at *4. The court added that, where an image is created "in the middle of sexual activity," there must be "some sufficient pause or other evidence to demonstrate that the production of child pornography was at least a significant purpose." *Id.* Markedly, the Fourth Circuit also ruled that "the image itself can be probative of intent" so long as additional evidence of intent is presented. *Id.*

The evidence that the government will present at trial is more than sufficient to convict the defendant under the standard that the Fourth Circuit has announced. The government will establish beyond a reasonable doubt that the defendant had the requisite purpose certainly by the time he created the video. As previously established at trial, the defendant admitted to having a conversation with N.C. about creating a video shortly before doing so, and he would have had to manipulate his iPhone in order to create the video. This means that, as a matter of human physiology, there necessarily was a sufficient pause in the sexual activity, and the defendant's statements and his panning of the iPhone camera to focus on his penis penetrating N.C.'s

5

genitalia establish that the creation of the video was a significant purpose in the defendant's continuation of sex with N.C.

Moreover, the government also will prove beyond a reasonable doubt that, even if there was not a sufficient pause in the sexual activity, the defendant had the requisite intent even before he started having sex with N.C.  For instance, the government will show that the defendant had previously sought out self-produced pornography, had previously discussed sex with N.C. and had asked N.C. for pictures, had photographs of himself and N.C. in bed immediately before and after the creation of the video, and later bragged online about creating the video.

Disregarding this evidence, the defense asks the Court to dismiss the prosecution.  There is no basis for this request, however.  The Fourth Circuit's decision is not a ruling on the sufficiency of the evidence.  Indeed, sufficiency of the evidence was one of the defendant's grounds for appeal and was the primary focus of the panel during oral argument.  Yet, the Fourth Circuit did not address the sufficiency of the evidence in its decision.  Further, the defense cites to no statute, rule, or case that provides for dismissal of a prosecution at the request of a defendant for insufficient evidence prior to trial.

The Court therefore should reject the defendant's request to dismiss the case.  It instead should set this matter for trial.  The government asks that trial in this case be set for June 2021. Scheduling trial in June, the government submits, is necessary to account for the current suspension of jury trials in this District due to the coronavirus pandemic, the trials that this Court already has scheduled for the spring, and government counsel's upcoming trial schedule.

The government also asks that the Court continue to detain the defendant pending trial. Section 2251(a) carries a rebuttable presumption of detention in order to assure a defendant's

appearance as required and the safety of the community.   18 U.S.C. § 3142(e)(3)(E).   On August 10, 2018, the Honorable Ivan D. Davis ordered that the defendant could be released to home detention if certain conditions were met, one of which was identification of a suitable third-party custodian.   The defendant never met those conditions, and thus remained detained throughout the pendency of this case.

It is the government's position that there are no conditions that could reasonably assure the defendant's appearance as required or the safety of the community.   The charged offense is serious, and the strength of the evidence is strong.   The likelihood the defendant will be convicted again, therefore, is high.   As a result, the combination of § 3142's rebuttable presumption and the weight of § 3142(g)'s factors is such that the Court must order the defendant's continued detention pending trial.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court set this matter down for trial in June and continue to hold the defendant pending trial.

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

Date: January 18, 2021                             /s/
Alexander P. Berrang
Jay V. Prabhu
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: Alexander.P.Berrang@usdoj.gov

7

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2021, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the attorneys of record for the defendant.

/s/
Alexander P. Berrang
Assistant United States Attorney